UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | EDCV 25-02694-KK-ADSx | Date: | November 3, 2025 |
|---|---|---|---|
| Title: | ***Patrik Nazarian v. Kristi Noem et al.*** | | |

Present: The Honorable  KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Twyla Freeman | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   **(In Chambers) Order GRANTING IN PART Petitioner's Ex Parte Application for Temporary Restraining Order [Dkt. 7]**

## I.
## INTRODUCTION

On October 22, 2025, petitioner Patrik Nazarian ("Petitioner"), who is currently detained in the custody of Immigration and Customs Enforcement ("ICE"), filed a First Amended Petition for Writ of Habeas Corpus ("FAP") against respondents Kristi Noem, Todd M. Lyons, and Samaia Fereti ("Respondents"). ECF Docket No. ("Dkt.") 6, FAP. On October 27, 2025, Petitioner filed the instant Ex Parte Application ("Application"), seeking a Temporary Restraining Order ("TRO") enjoining Respondents from continuing to detain Petitioner or removing Petitioner to a third country without notice and an opportunity to be heard. Dkt. 7, Application ("App.").

The Court finds this matter appropriate for resolution without oral argument. See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, Petitioner's Application is **GRANTED IN PART**.

## II.
## BACKGROUND

Petitioner was born in Iran in 1984. App. at 7; Dkt. 9-1, Ex. 1, Declaration of Patrik Nazarian ("Nazarian Decl.") ¶ 1. After fleeing Iran to escape religious persecution, Petitioner, along with his parents and brother, resettled in the United States in 2001 as refugees. App. at 7; Nazarian Decl. ¶ 2. As an adult, Petitioner developed an addiction to prescription medication and other

controlled substances after sustaining a workplace-related injury. App. at 7; Nazarian Decl. ¶ 3. In 2013, Petitioner was convicted of possession, burglary, and theft. Dkt. 11-1, Declaration of Jorge Suarez ("Suarez Decl.") ¶¶ 4-7. Upon Petitioner's release from state custody, ICE detained Petitioner, and an Immigration Judge ordered him removed to Iran. App. at 7; Suarez Decl. ¶¶ 9-11. In 2014, following approximately 90 days of detention, ICE released Petitioner under an Order of Supervision ("OSUP") because the United States lacked a repatriation agreement with Iran. App. at 7-8; Nazarian Decl. ¶ 7; Suarez Decl. ¶ 13.

Petitioner complied with the terms of the OSUP for 18 months before relapsing and sustaining convictions for possession and robbery in 2017. App. at 8; Nazarian Decl. ¶¶ 8-9. Upon his second release from state custody, ICE revoked Petitioner's supervision and re-detained him. App. at 8; Nazarian Decl. ¶ 10; Suarez Decl. ¶ 15. In 2018, after approximately 45 days of custody, ICE released Petitioner on a second OSUP. App. at 8; Nazarian Decl. ¶ 10; Suarez Decl. ¶ 16.

Following his release on a second OSUP, Petitioner worked to rebuild his life, obtaining employment, starting a business, marrying his wife, and co-parenting two children. App. at 8; Nazarian Decl. ¶ 11. Petitioner alleges he has fully complied with the terms of the second OSUP since his release over seven years ago. App. at 8; Nazarian Decl. ¶ 12.

On June 24, 2025, ICE apprehended Petitioner at his home. App. at 9. Petitioner was transferred to the Adelanto ICE Processing Center, where he remains pending removal. Id.; Suarez Decl. ¶ 18. Petitioner alleges neither he nor his counsel were provided notice of the revocation of his release, an explanation for his re-detention, or an opportunity to challenge his re-detention. App. at 9; Nazarian Decl. ¶ 18; Dkt. 9-1, Ex. 3, Declaration of Douglas Jalaie ("Jalaie Decl.") ¶¶ 7-8. Petitioner further alleges, while he remains in ICE custody, he "fears being removed to a third country without notice or an opportunity to receive an individualized hearing." App. at 26.

On October 22, 2025, Petitioner filed the operative Petition against Respondents, raising the following grounds for relief:

1. **Ground One:** Unlawful Detention, in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution ("Due Process Clause");
2. **Ground Two:** Unlawful Detention, in violation of section 702 of the Administrative Procedure Act, for failing to comply with 8 C.F.R. § 241.13(i);
3. **Ground Three:** Unlawful 90-Day Detention, in violation of section 702 of the Administrative Procedure Act, for failing to comply with 8 C.F.R. § 241.4(d); and
4. **Ground Four:** Unlawful Potential Removal to a Third Country, in violation of the Due Process Clause, 8 U.S.C. § 1231, and 8 C.F.R. § 1208.17(b)(2).

FAP at 3-4.

On October 27, 2025, Petitioner filed the instant Application. App. First, Petitioner argues ICE unlawfully re-detained him in violation of the Due Process Clause by revoking his release and re-detaining him without following ICE's regulations requiring notice and an opportunity to be heard ("Detention Claim"). Id. at 10-18. Second, Petitioner argues his potential removal to a third country without notice and an opportunity to be heard also violates the Due Process Clause ("Third Country Removal Claim"). Id. at 18-19. Third, Petitioner argues ICE failed to provide a 90-day custody review as prescribed by ICE's regulations ("90-Day Review Claim"). Id. at 19-20.

On October 30, 2025, Respondents filed an Opposition. Dkt. 11, Opposition ("Opp."). Respondents assert ICE is "currently arranging" for Petitioner's removal to Iran "in the reasonably foreseeable future." Id. at 7-8. Respondents argue ICE, therefore, properly exercised its discretion in re-detaining Petitioner. Id. at 3-6. Additionally, Respondents maintain Petitioner does not face an imminent threat of removal to a third country. Id. at 8.

On the same day, Petitioner filed a Reply. Dkt. 12, Reply.

This matter, thus, stands submitted.

## III.
## LEGAL STANDARD

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001). Under Federal Rule of Civil Procedure 65, the Court may grant a temporary restraining order to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b)(1). Like a preliminary injunction, a temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).

The party seeking such relief must establish: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities weighs in its favor; and (4) the injunction is in the public interest ("Winter factors"). See id. at 20. Courts in the Ninth Circuit also employ "an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the Winter standard." Fraihat v. U.S. Immigr. & Customs Enf't, 16 F.4th 613, 635 (9th Cir. 2021) (citation modified). Under the serious questions standard, the four Winter elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). Thus, a TRO may be warranted where there are "'serious questions going to the merits' and a hardship balance . . . that tips sharply toward the plaintiff," and so long as the other Winter factors are also met. Id. at 1132.

## IV.
## DISCUSSION

A.   THE WINTER FACTORS WEIGH IN FAVOR OF GRANTING THE TEMPORARY RESTRAINING ORDER

   1.   Likelihood of Success on the Merits

The likelihood of success on the merits is the most important Winter factor, which "is especially true for constitutional claims." Junior Sports Mags. Inc. v. Bonta, 80 F.4th 1109, 1115 (9th Cir. 2023) (citing Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)). Here, the Court

finds Petitioner is likely to succeed on the merits or has at least raised "serious questions" regarding the merits of his Detention Claim.[1]

        a.    **Detention Claim**

            i.  **Applicable Law**

"Freedom from imprisonment . . . lies at the heart of the liberty" that the Fifth Amendment's Due Process Clause protects. Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all 'persons' within the United States," including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." Id. at 693. Thus, a noncitizen under an OSUP has a constitutional liberty interest in their continued release from immigration detention. See Sun v. Santacruz, No. EDCV-25-02198-JLS-JCx, 2025 WL 2730235, at *5-6 (C.D. Cal. Aug. 26, 2025) (finding the petitioner had a "substantial" liberty interest in "remaining out of immigration custody" pursuant to an OSUP and granting a TRO enjoining the respondents from re-detaining the petitioner without a pre-detention hearing before a neutral adjudicator); Yang v. Kaiser, No. 2:25-CV-02205-DAD-AC (HC), 2025 WL 2791778, at *7-10 (E.D. Cal. Aug. 20, 2025) (same).

---

[1] With respect to Petitioner's Third Country Removal Claim, there is no evidence before the Court showing Respondents seek to remove Petitioner to a third country. See Jalaie Decl. ¶ 9 (stating "[a] travel document application is currently pending with the Government of Iran" according to an email from a Deportation Officer). For example, Petitioner does not present evidence of statements by ICE officials suggesting they are considering removal to a third country. Compare Nazarian Decl. ¶ 18 (stating an ICE officer told Petitioner they "didn't know what they were doing with [him]"), with Delkash v. Noem, No. EDCV-25-01675-HDV-AGRx, 2025 WL 2683988, at *2 (C.D. Cal. Aug. 28, 2025) (stating ICE officers told the petitioner they planned to remove him to South Sudan), and Nadari v. Bondi, No. CV-25-07893-JLS-BFMx, 2025 WL 2934514, at *3 (C.D. Cal. Sep. 3, 2025) (stating an ICE official informed the petitioner's counsel that an officer would decide where the petitioner would be removed). Similarly, Petitioner does not present evidence showing he cannot be removed to Iran or of other similarly situated individuals who have been removed to third countries without notice. See, e.g., Delkash, 2025 WL 2683988, at *3 (noting the petitioner was granted withholding to Iran); Esmail v. Noem, No. CV-25-08325-WLH-RAOx, 2025 WL 3030589, at *5 n.8 (C.D. Cal. Sep. 26, 2025) (noting the petitioner had an order deferring removal to his home country and therefore was "inherently at risk of removal" to a third country); Nguyen v. Scott, No. 2:25-CV-01398, 2025 WL 2419288, at *26-27 (W.D. Wash. Aug. 21, 2025) (reviewing evidence concerning similarly situated individuals). Accordingly, the Court will **DENY** Petitioner's request for a TRO enjoining Respondents from removing him to a third country. Nonetheless, the Court recognizes Petitioner's fears concerning third country removal, and Petitioner may present his Third Country Removal Claim in a renewed application if he obtains supporting evidence.

        With respect to Petitioner's 90-Day Review Claim, Respondents assert a 90-day custody review was conducted on October 3, 2025, but do not dispute Petitioner did not receive a written copy of the decision. See Opp. at 2; Suarez Decl. ¶ 19. Because Petitioner is entitled to habeas relief on his Detention Claim, the Court need not address this issue. However, the Court notes the government is mandated to follow custody review procedures for detained noncitizens pursuant to 8 C.F.R. § 241.13(k).

8 U.S.C. § 1231(a) ("Section 1231(a)") governs the detention, release, and removal of noncitizens with an order of removal. Under Section 1231(a), a noncitizen who has been ordered removed must be detained during the 90-day removal period. 8 U.S.C. §§ 1231(a)(1)(A), 1231(a)(2)(A). However, if a noncitizen is not removed within this period, they must be released "subject to supervision under regulations prescribed by the Attorney General." Id. § 1231(a)(3). While certain noncitizens may be detained beyond the 90-day removal period, such noncitizens, if released, must also be subject to the same terms of supervision as under Section 1231(a)(3). Id. § 1231(a)(6).

8 C.F.R. § 241.4 ("Section 241.4") and 8 C.F.R. § 241.13 ("Section 241.13") set the terms of supervised release under Section 1231(a)(3) and 8 U.S.C. § 1231(a)(6) ("Section 1231(a)(6)"), including the conditions and procedures under which ICE may revoke release. 8 C.F.R. §§ 241.4(l), 241.13(i).[2] First, ICE may revoke release when a noncitizen violates a condition of their OSUP. Id. §§ 241.4(l)(1), 241.13(i)(1). Second, ICE may revoke release when, "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." Id. § 241.13(i)(2). Third, certain officials may exercise their discretion to revoke release. Id. § 241.4(l)(2).

Upon revocation of release, ICE must provide the noncitizen a copy of the decision "set[ting] forth the reasons for the continued detention." Id. § 241.4(d). Additionally, the noncitizen must be "notified of the reasons for revocation," id. § 241.4(l)(1), and afforded "an initial informal interview promptly . . . to respond to the reasons for revocation stated in the notification," id. §§ 241.13(i)(3).[3]

### ii. Analysis

Here, Petitioner argues his current re-detention violates the Due Process Clause because ICE failed to follow its own regulations in revoking Petitioner's OSUP. App. at 13-18. It is undisputed Petitioner did not receive any notice of revocation, let alone a notice specifying the reasons for his re-detention. Id. at 15. It is also undisputed Petitioner still has not received a written explanation setting forth the reasons for his re-detention since his release was revoked over four months ago. Id. at 17. Finally, it is undisputed Petitioner did not receive an interview upon re-detention to challenge the revocation of release. Id. at 17-18. Hence, Petitioner is likely to succeed

---

[2] Section 241.4 establishes conditions and procedures for the continued detention of noncitizens beyond the statutory 90-day removal period under Section 1231(a)(6). See 8 C.F.R. § 241.4(a). In comparison, Section 241.13 establishes special procedures for noncitizens "who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 . . . where the [noncitizen] has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future." 8 C.F.R. § 241.13(a). See Grigorian v. Bondi, No. 25-CV-22914-RAR, 2025 WL 2604573, at *4-5 (S.D. Fla. Sept. 8, 2025), for a detailed explanation on the distinction between Sections 241.4 and 241.13.

[3] The parties do not specify whether Section 241.13 or Section 241.4 applies to Petitioner. See App. at 10-18; Opp. at 3-6. Because both provisions require notice and an informal interview, the Court need not decide this issue.

on his claim that the revocation of his release and subsequent re-detention violate ICE's own regulations and, thereby, the Due Process Clause. See, e.g., Delkash, 2025 WL 2683988, at *6 ("These procedures are not optional or discretionary; they must be followed, and failure to do so renders the detention unlawful."); Perez-Escobar v. Moniz, No. 25-CV-11781-PBS, 2025 WL 2084102, at *2 (D. Mass. July 24, 2025) ("ICE's failure to give Petitioner meaningful notice of the basis for its revocation of his release violated the regulation and due process."); Phan v. Noem, No. 3:25-CV-02422-RBM-MSB, 2025 WL 2898977, at *3 (S.D. Cal. Oct. 10, 2025) ("ICE failed to comply with the required procedures, thereby violating Petitioner's due process rights.").

Respondents nonetheless argue "[t]he government is allowed to revoke for nearly any reason" pursuant to Section 241.4, and "the process for any objections is exceedingly limited." Opp. at 4; see also 8 C.F.R. § 241.4(l)(2)(iv) (authorizing revocation when, in the opinion of the revoking official, "[t]he conduct of the [noncitizen], or any other circumstance, indicates that release would no longer be appropriate"). The Court is unpersuaded by Respondents' argument. Even if Section 241.4 grants certain officials broad discretion over revocation, the regulation still requires ICE to provide Petitioner notice and an interview.[4] See Rodriguez v. Hayes, 591 F.3d 1105, 1117 (9th Cir. 2010) (explaining Section 241.4 "provides the detainee some opportunity to respond to the reasons for revocation"); cf. Morton v. Ruiz, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."). Respondents offer no authority to suggest ICE may simply ignore Section 241.4's procedural safeguards in discretionary revocations. See Zhu v. Genalo, No. 1:25-CV-06523 (JLR), 2025 WL 2452352, at *7-8 (S.D.N.Y. Aug. 26, 2025) (finding Section 241.4's procedural protections apply to discretionary revocations).

Respondents alternatively contend Petitioner has failed to establish "there is no significant likelihood of removal in the reasonably foreseeable future." Id. at 7 (quoting Zadvydas, 533 U.S. at 701). However, this argument misconstrues Petitioner's Detention Claim. Contrary to Respondents' assertions, Petitioner is not challenging his detention during an initial removal period. See, e.g., Zadvydas, 533 U.S. at 701 (holding a noncitizen may be released after six months of detention pending removal if they "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future"). Rather, because Petitioner challenges his re-detention after already being released on an OSUP, "ICE's own regulations [] place the burden on ICE to show changed circumstances that make removal significantly likely in the reasonably foreseeable future." Sun v. Noem, No. 3:25-CV-02433-CAB-MMP, 2025 WL 2800037, at *2 (S.D. Cal. Sep. 30, 2025); see also 8 C.F.R. §§ 241.13(i)(2)-(3). As discussed above, Respondents failed to meet this burden by declining to provide Petitioner with any notice or

---

[4] Moreover, Section 241.4 permits only the Executive Associate Commissioner or district director to revoke Petitioner's release on a discretionary basis. 8 C.F.R. § 241.4(l)(2). Here, Respondents do not specify who made the decision to revoke Petitioner's release. Therefore, to the extent Petitioner's revocation was a discretionary act pursuant to Section 241.4, Respondents do not establish the decision was issued by a properly authorized official. See Santamaria Orellana v. Baker, No. CV-25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025) (finding a discretionary revocation of the petitioner's release was not made by a properly authorized official); Ceesay v. Kurzdorfer, 781 F. Supp. 3d 137, 159-62 (W.D.N.Y. 2025) (finding a delegation of authority to revoke release was unlawful).

explanation of the reasons for the revocation, including any alleged "changed circumstances."[5]  See, e.g., Sun, 2025 WL 2800037, at *2 ("A pro forma notice that gives no information on why release is being revoked, beyond simply that Petitioner 'will be taken into custody for the purpose of removal from the United States[,]' is insufficient." (citation modified)).

Accordingly, the first and most important Winter factor weighs in favor of Petitioner.

### 2.     Likelihood of Irreparable Harm

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) (citation modified) (quoting Melendres, 695 F.3d at 1002).  "Deprivation of physical liberty by detention constitutes irreparable harm."  Arevalo v. Hennessy, 882 F.3d 763, 767 (9th Cir. 2018) (citing Hernandez, 872 F.3d at 994).  Indeed, Petitioner "suffers potentially irreparable harm every day that he remains in custody without a hearing, which could ultimately result in his release from detention."  Cortez v. Sessions, 318 F. Supp. 3d 1134, 1139 (N.D. Cal. 2018) (citation modified).  Furthermore, immigration detention imposes collateral irreparable harms on noncitizens' families, including economic burdens and harms to children whose parents are detained.  Hernandez, 872 F.3d at 995.

Here, as stated above, Petitioner's release has been improperly revoked, and Petitioner has been unlawfully detained in violation of his due process rights.  In addition, Petitioner's family has endured significant financial, health and psychological burdens resulting from his re-detention.  Petitioner was re-detained two weeks before his wife gave birth to their second child, forcing her to raise and support their children on her own.  App. at 9-10.  Petitioner's wife subsequently lost her job, and Petitioner has not been able to work to provide for his family.  Id. at 10.  Following Petitioner's separation from his family, his son began experiencing behavioral and emotional distress.  Id. at 9.  Hence, Petitioner and his family are – and will continue to be – irreparably harmed absent relief from this Court.

Accordingly, the second Winter factor weighs in favor of Petitioner.

### 3.     Balance of Equities and Public Interest

The final two Winter factors "merge when the Government is the opposing party."  Nken v. Holder, 556 U.S. 418, 435 (2009).  The Ninth Circuit has recognized "neither equity nor the public's interest are furthered by allowing violations of federal law to continue."  Galvez v. Jaddou, 52 F.4th

---

[5] In the Opposition, Respondents allege "changed political circumstances have now made Iranian deportations possible."  Opp. at 1.  Furthermore, in a declaration, Deportation Officer Jorge Suarez alleges "ICE is in the process of obtaining travel documents from Iran" and "ICE has recently been able to timely obtain travel documents and effectuate removal to Iran."  Suarez Decl. ¶¶ 20-21.  Even if ICE provided Petitioner notice and an opportunity to challenge such findings, these conclusory assertions do not establish "changed circumstances" with respect to Petitioner's specific removability.  See, e.g., Nguyen v. Hyde, 788 F. Supp. 3d 144, 152 (D. Mass. 2025) (requiring ICE to identify the "concrete steps ICE has taken to process [Petitioner's] particular travel document"); Yang, 2025 WL 2791778, at *17-18 (requiring an individualized determination of changed circumstances).

821, 832 (9th Cir. 2022) (affirming the balance of hardships weighed in favor of plaintiffs alleging the government violated the INA). Specifically, in cases involving removal, "there is a public interest in preventing [noncitizens] from being wrongfully removed." Nken, 556 U.S. at 436.

Here, because Petitioner has demonstrated a likelihood of success on his constitutional claims, the balance of equities and public interest "tips sharply" in his favor. All. for the Wild Rockies, 632 F.3d at 1135. Moreover, Respondents' interest in enforcing its immigration laws is not compelling because "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs., 594 U.S. 758, 766 (2021) (citing Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 582, 585-86 (1952)); see also Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs., 777 F. Supp. 3d 1039, 1045-46 (N.D. Cal. 2025), appeal dismissed, No. 25-2358, 2025 WL 1189827 (9th Cir. Apr. 18, 2025) ("[C]ourts regularly find that '[t]here is generally no public interest in the perpetuation of unlawful agency action.'" (quoting League of Women Voters of U.S. v. Newby, 838 F.3d 1, 12 (D.C. Cir. 2016))).

Accordingly, the third and fourth Winter factors weigh in favor of Petitioner.

\* \* \* \* \*

Thus, because all four Winter factors weigh in favor of Petitioner, Petitioner is entitled to injunctive relief on his Detention Claim, enjoining Respondents from continuing to detain him. See, e.g., Esmail, 2025 WL 3030590, at \*9. While Respondents argue the proper relief is remedying the specific procedural defects rather than releasing Petitioner from custody, see Opp. at 4-6, the Court rejects this argument. Here, Petitioner's release is necessary to return him to the status quo. The status quo is "the last uncontested status which preceded the pending controversy." Hoac v. Becerra, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at \*7 (E.D. Cal. July 16, 2026) (citation modified) (quoting GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000)). The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention. See Domingo-Ros v. Archambeault, No. 25-CV-1208-DMS-DEB, 2025 WL 1425558, at \*2 (S.D. Cal. May 18, 2025) ("Petitioners seek a prohibitory injunction because they seek to preserve the status quo preceding this litigation—their physical presence in the United States free from detention."). Accordingly, Petitioner's release from custody is the appropriate remedy. See Esmail, 2025 WL 3030590, at \*9 ("Providing Petitioner an interview ex post facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process.").

## V.
## CONCLUSION

For the reasons set forth above, the Court orders as follows:

1. Petitioner's Ex Parte Application for Temporary Restraining Order is **GRANTED IN PART** and Respondents are **ORDERED** to immediately release Petitioner from their custody.[6]

---

[6] Federal Rule of Civil Procedure 65(c) permits a court to grant injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages

2. Petitioner's request for a Temporary Restraining Order enjoining Respondents from removing him to a third country without notice and an opportunity to be heard is **DENIED** without prejudice.

**IT IS SO ORDERED**.

---

sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court 'with discretion as to the amount of security required, if any.'" Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009) (emphasis removed) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)). Here, it is unlikely Respondents will incur any significant costs, and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." Baca v. Moreno Valley Unified Sch. Dist., 936 F. Supp. 719, 738 (C.D. Cal. 1996). Accordingly, the Court waives the bond requirement.